UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : No. 19-cr-276-VLB |
| | : |
| ORLANDO MARTINEZ | : |
| | : DECEMBER 29, 2020 |
| | : |

## MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Before the Court is Defendant, Orlando Martinez's motion for compassionate release filed pro se. Pro Se Mot., Dkt. 697. Defense counsel for Mr. Martinez filed a supplemental motion on his behalf along with Mr. Martinez's medical records. Suppl. to Mot., Dkt. 720; Medical Records, Dkt. 724. The Government filed a response. Response, Dkt. 743. Upon consideration, the Court denies the motion for the following reasons.

I. BACKGROUND

A. Case Background

On October 29, 2019, Mr. Martinez was arrested on a criminal complaint charging conspiracy to possess with intent to distribute 100 grams or more of heroin. Compl., Dkt. 1. That day he appeared before Judge Merriam for an initial appearance, where Judge Merriam ordered his detention. Order of Detention, Dkt. 13. Shortly thereafter, an indictment was entered where a grand jury charged Mr. Martinez with conspiracy to distribute and possess with intent to distribute heroin and fentanyl. Indictment, Dkt 25. On January 8, 2020, a superseding indictment was filed, providing that the foreseeable quantities for Mr. Martinez's conduct and

that of other members of the narcotic conspiracy is 100 grams or more of a mixture and substance containing a detectable amount of heroin, and for a mixture and substance containing a detectable amount of fentanyl. Superseding Indictment, at ¶¶ 4, 6. On February 27, 2020, Mr. Martinez entered into a plea agreement, where he agreed to plead guilty to Count One of the superseding indictment. Plea Agreement, Dkt. 206.

A sentencing hearing was scheduled for July 23, 2020. Prior to the sentencing hearing, a pre-sentence investigation report was prepared and filed by the Office of Probation. PSR, Dkt. 301. With respect to the offense conduct, the PSR provides that:

> Orlando Martinez a.k.a. "Bolo," operated as a bulk redistributor of narcotics for the Sosa drug trafficking organization. Specifically, Mr. Martinez purchased bulk raw quantities of heroin at the Corner Mini Market from Mr. Aybar-Peguero and Mr. Polanco and was intercepted on a number of calls over Target Telephone 6 discussing the quantities of narcotics being purchased and the amount of money owed to Mr. Aybar-Peguero for those narcotics. The substance of these intercepted calls and witness testimony along with the quantities of bundled heroin and fentanyl seized from the Corner Mini Market establishes the basis for the quantity allegation against Mr. Martinez in Count One.
>
> The parties agree that, from May 2019 to October 2019, the defendant, Mr. Martinez knew or reasonably should have foreseen that an object of the conspiracy involved the possession with intent to distribute and distribution of at least 100 kilograms, but less than 400 kilograms of converted drug weight. . . .
>
> During that interview, the defendant admitted to the essential elements of the offense as listed in the plea agreement.

PSR at ¶¶ 23–24, 27.

The PSR also outlines Mr. Martinez's prior criminal convictions. In 1996, he was convicted of violating a protective order and sentenced to one

year in jail, which was suspended, and three years of probation. *Id.* at ¶ 42. He violated his probation and was sentenced to one year in jail to run concurrently with a separate offense. *Id.* Also, in 1996, he was convicted of altering a pistol ID and possession of narcotics and was sentenced to three years in prison for both offenses, which was suspended, and three years of probation to run concurrently. *Id.* at ¶ 43. He violated that probation and was sentenced to one year in jail to run concurrently with the above probation violation. *Id.* Also, in 1996, he was convicted of assault in the third degree and was sentenced to nine-months in jail, suspended, with eighteen months of probation. *Id.* at ¶ 44. He violated that probation and was sentenced to one year in jail to run concurrently with the above probation violation sentences. *Id.* Also, in 1996, he was convicted of breach of peace and was sentenced to thirty-days in jail. *Id.* at ¶ 45. In 2001, Mr. Martinez was convicted for the sale of narcotics and was sentenced to sixty-six months in jail. *Id.* at ¶ 47. In 2006, while on parole for the 2001 conviction, he was convicted for the sale of narcotics and sentenced to eighteen months in jail. *Id.* at ¶ 48. In 2009, Mr. Martinez was convicted for possession with intent and was sentenced to eight years in jail with seven years of special parole. *Id.* at ¶ 49. The underlying offense conduct occurred while he was on parole for the 2009 conviction. *Id.* At the time of the PSR, he was wanted for a parole violation. *Id.*

This Court sentenced Mr. Martinez to seventy months in the custody of the Federal Bureau of Prisons, along with five years of supervised release,

and a $100 special assessment. Judgment, Dkt. 467. He has been in custody since his arrest, approximately fourteen months ago. Meaning, he has served approximately fourteen months of his seventy-month sentence, which represents approximately 20% of his sentence served.

### B. Mr. Martinez's Health

Mr. Martinez is 52 years old. PSR at ¶ 63. He reported having diabetes and high blood pressure to the Office of Probation, and indicated he was not receiving the proper medication for his diabetes. *Id.* Attached to the supplemental motion were medical records, which do indicate that Mr. Martinez has diabetes and high blood pressure. *See* Medical Records. However, the records do not show whether he is or is not receiving medication to treat these conditions, whether these conditions are well controlled, nor do the records show the severity of these conditions. *See id.* Mr. Martinez has not provided the Court with any affidavit or the like explaining why the medical records do not include this information or supplementing the records with his first hand knowledge.

His medical records do show that he tested positive for COVID-19 on October 20, 2020. Medical Records at 2–5. Though defense counsel states that Mr. Martinez "suffered greatly with the condition" and still has "breathing problems"; Suppl. Mot. at 2; the medical records provided do not support those statements. The records show that on October 20, 2020, the day in which he tested positive with COVID-19, he had a low fever of 99.7, a cough, and a runny nose. Medical Recordss at 6. The record shows that that same day he did not have shortness of breath, fatigue, sore throat, headache, new loss of taste or smell, muscle/body aches,

nausea/vomiting, or diarrhea. *Id.* Then on November 21, 2020, the records show he was "asymptomatic" and his chief complaint was difficulty seeing, requiring glasses. *Id.* at 1. The evidence on the record does not support Mr. Martinez claim that he "suffered greatly."

### C. Wyatt

Mr. Martinez is being detained at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. The Judges of the District Court receive periodic updates from the United States Marshal Service and the Warden of Wyatt as to the current status of COVID-19 infection within the facility. As of the latest update on December 22, 2020, there are currently no active COVID-19 infections amongst the detainees.

## II. LEGAL STANDARD

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a

reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* "The defendant bears the burden of showing that she is entitled to a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020).

### III. ANALYSIS

#### a. Exhaustion

Mr. Martinez states that on November 13, 2020, he requested compassionate release to the Bureau of Prisons, which was denied on November 16, 2020. The Government concedes that Mr. Martinez has effectively exhausted his administrative remedies. The Court finds that Mr. Martinez has exhausted his administrative remedies and thus this motion is properly before the Court.

#### b. Extraordinary and Compelling Reasons

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> **(A) Medical Condition of the Defendant.--**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death

>    within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **[or]**
>
>    **(ii) The defendant is--**
>       **(I) suffering from a serious physical or medical condition,**
>       **(II) suffering from a serious functional or cognitive impairment, or**
>       **(III) experiencing deteriorating physical or mental health because of the aging process,**
>    **that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.**

U.S.S.G. 1B1.13, Commentary Application Note 1(A).  Any "other" "extraordinary and compelling reason" may also justify relief.  *Id.* at Commentary Application Note 1(D).

"[T]he mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  But this Court and others have recognized that an inmate's chronic medical condition that elevates his risk of becoming seriously ill from COVID-19 according to the CDC may be such an extraordinary and compelling reason.  *See United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) (collecting cases).

The Court finds that based on the medical records submitted Mr. Martinez suffers from type 2 diabetes and high blood pressure.  The CDC guidance explains that those with type 2 diabetes "are at increased risk of severe illness from the virus that causes COVID-19" and those with high blood pressure "might be at an

7

increased risk."[1]  The Government concedes that having type 2 diabetes does put Mr. Martinez at increased risk.

Mr. Martinez has recently been infected with, and appears to have recovered from, COVID-19.  The medical records indicate that, though he was at risk for a severe course of the disease, Mr. Martinez had mild symptoms.

The CDC explains that "Cases of reinfection of COVID-19 have been reported but are rare.  In general, reinfection means a person was infected (got sick) once, recovered, and then later became infected again. Based on what we know from similar viruses, some reinfections are expected."[2]  Neither party has provided any clear information one way or another as to whether Mr. Martinez is at risk of reinfection or would suffer a more severe course of the disease than the mild case he has already suffered.

The inmate population at Wyatt are seeing significantly less infection while incarcerated than the general population, which is currently experiencing a significant surge in infections.[3]  Consequently Mr. Martinez faces a greater exposure to COVID-19 in the general population than at Wyatt.

---

[1] *People with Certain Medical Conditions*, CDC.Gov., available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 21, 2020).

[2] *When You Can be Around Others After You Had or Likely Had COVID-19*, CDC.Gov., available at https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/end-home-isolation.html (last visited Dec. 21, 2020).

[3] The seven-day average positive rate in Connecticut as of December 15, 2020 was 6.48%.  *See CT Data Collaborative*, Tableau Public, available at: https://public.tableau.com/profile/connecticut.state.data.center#!/vizhome/ConnecticutCOVID-19CaseTracking/CTdataCollaborativeCOVID-19 (last visited Dec. 21, 2020).

Based on this record, the Court finds Mr. Martinez has failed to meet his burden of showing he is at material risk of reinfection or that he would suffer a severe case of COVID-19 if he was re-infected.

c. <u>Section 3553(a) Factors</u>

Though the Court has found that Mr. Martinez has failed to establish an extraordinary and compelling reason for release, the Court also finds that he has failed to establish the § 3553(a) factors weigh in favor of a fifty-six-month reduction in sentence.  The Court sentenced Mr. Martinez during the COVID-19 pandemic, knowing that he had type 2 diabetes and high blood pressure based on an analysis of the 3553(a) Factors.

Since then Mr. Martinez has served a small fraction of his sentence and he suffered a relatively mild case of COVID-19. As the Court noted during the sentencing less than five months ago, the nature and circumstances of the offense and the history and characteristics of Mr. Martinez warrant a seventy-month sentence of incarceration.  The seriousness of the offense conduct cannot be understated.  Mr. Martinez has engaged in conduct that he knew was illegal and was bad for the people he preyed on, their families and the community.  He has lived a life filled with the commission of crimes that have only been abated by periods of incarceration.  He has squandered lenient sentences, supervision, opportunities for treatment; all in exchange for selling drugs, poisoning and exploiting the sickness of others.  He is an unremitting drug dealer.  The sentence reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment.  § 3553(a)(2(A).  Mr. Martinez has not persuaded the Court that

the fact that he contracted a mild course of COVID-19 and is unlikely to be re-infected or suffer a severe infection in the future alters the § 3553(a) calculus.

## IV. CONCLUSON

For the aforementioned reasons, the Court DENIES Mr. Martinez's motion for compassionate release.

IT IS SO ORDERED.

                                                  /s/
                                     Hon. Vanessa L. Bryant
                                     United States District Judge

Dated this day in Hartford, Connecticut: December 29, 2020